UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| HERBERT D. PHIPPS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 2:14-cv-00097-JMS-DLP |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**Entry Denying Remaining Claim for Relief Pursuant to 28 U.S.C. § 2255
And Directing Entry of Final Judgment**

Petitioner Herbert D. Phipps' ("Phipps") motion for relief pursuant to 28 U.S.C. § 2255 is now ripe for resolution. The Entry of January 6, 2017, dismissed all of Phipps' grounds for relief except one. The Court held that an evidentiary hearing was necessary to resolve whether Phipps' counsel was constitutionally ineffective by providing incorrect information related to the United States' plea offer and the statutory minimum sentence Phipps faced which resulted in Phipps rejecting a potentially favorable plea deal in his criminal case 2:10-cr-0007-JMS-CMM-14.

For the reasons explained below, Phipps' counsel provided constitutionally adequate counsel during plea negotiations and as a result, Phipps is not entitled to any relief.

### I. Background

On April 13, 2010, the Grand Jury sitting in the Southern District of Indiana handed down a two-count Indictment in which multiple defendants were charged with federal conspiracy and drug offenses. Phipps was charged in Count One of that Indictment with conspiracy to possess with intent to distribute in excess of 500 grams of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II Non-Narcotic Controlled Substance, and 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, a

1

Schedule I, Non-Narcotic Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1).

On April 13, 2010, an Initial Appearance on Indictment hearing was held. During the course of that proceeding, Phipps was notified that if he had two or more prior drug felonies, he faced a life sentence. *See* Crim. dkt. 1591 (signed penalty sheet).

On May 5, 2010, a detention hearing was held. Phipps was present. During that hearing the prosecutor argued that Phipps should not be released pending trial because Phipps had two prior felony drug convictions such that he faced a mandatory minimum of life in prison if convicted. *See* Crim. dkts. 185 and 186.

On June 15, 2010, the Grand Jury sitting in the Southern District of Indiana handed down a four-count Superseding Indictment in which multiple defendants were charged with federal conspiracy and drug offenses. Again, Phipps was charged in Count One of that Indictment with conspiracy to possess with intent to distribute in excess of 500 grams of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II Non-Narcotic Controlled Substance, and 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I, Non-Narcotic Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

On February 16, 2011, the Government filed an Information pursuant to 21 U.S.C. § 851(A)(1) asserting that Phipps had been previously convicted of two prior felony drug convictions.

On March 15, 2011, following a three-week jury trial, Phipps was found guilty of Count One of the Superseding Indictment.

On June 21, 2011, Phipps filed a response objecting to the Information on the grounds that the convictions were obtained in violation of his Sixth Amendment right to counsel. On July

1, 2011, the Government filed an Answer to Phipps' objection and attached as exhibits evidence that Phipps was represented by counsel at the time of conviction and sentencing for both convictions listed on the § 851 Information. On July 5, 2011, Phipps withdrew his objection to the § 851 Information.

On July 8, 2011, a sentencing hearing was conducted. At the conclusion of that hearing, the Court sentenced Phipps to a term of life imprisonment (the mandatory minimum). Phipps was also ordered to serve ten years supervised release and to pay a $100 special assessment. Judgment was formally entered on the Court's docket on July 11, 2011.

On July 25, 2011, Phipps appealed his conviction and sentence, along with eight of his co-defendants, but that appeal proved unsuccessful. *See United States v. Moreland*, 703 F.3d 976 (7th Cir. 2012). Phipps sought further review from the United States Supreme Court, but the Court denied his petition for a *writ of certiorari* on May 13, 2013. *See Moreland v. United States*, 133 S.Ct. 2377 (2013).

On March 31, 2014, Phipps filed a motion to vacate, set-aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Phipps was permitted to file an Amended Motion and Memorandum of Law in Support of his Motion to Vacate, Set-Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. Dkts. 38 and 39. The amended motion filed July 6, 2016, replaced and superseded Phipps' prior motions, supplements and amendments. *See* dkts. 36 and 39.

After considering the § 2255 motion, this Court held that all but one claim for relief could be resolved based on the records. Dkt. 47. Accordingly, counsel was appointed to represent Phipps in resolving his remaining claim for relief; that is, whether Phipps' trial counsel failed to advise and/or properly counsel Phipps with respect to the government's plea offer. Following multiple delays based on Phipps' health conditions and inability to travel, an evidentiary hearing

was held on February 14, 2018. Phipps appeared in person and by counsel. Phipps' former attorney, Kenneth L. Riggins testified. Phipps also called Nichole Phipps, Gary Couch, and Debra Lowe as witnesses. Their testimony was permitted over the United States' objection.

## II. Discussion

The Court must grant a § 2255 motion when a petitioner's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). Relief under § 2255 is available only if an error is "constitutional, jurisdictional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997) (quotations omitted).

Phipps claims that he is entitled to relief under § 2255 because his counsel failed to provide effective assistance as guaranteed by the Sixth Amendment. The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. This right to assistance of counsel encompasses the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009).

A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011); *see also Stitts v. Wilson,* 713 F.3d 887, 891 (7th Cir. 2013) (petitioner has burden of demonstrating both deficient performance and prejudice). To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court

4

to specific acts or omissions of his counsel. *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009). The Court must then consider whether in light of all of the circumstances, counsel's performance was outside the wide range of professionally competent assistance. *Id.*

### III. Findings of Fact and Conclusions of Law

As previously mentioned, a hearing was held to determine whether Phipps received ineffective assistance of counsel in relation to plea negotiations. Specifically, the court considered testimony regarding whether Phipps was informed that if he proceeded to trial and was convicted he could face a mandatory life sentence and whether that information would have changed his decision to reject the Government's plea offer which called for a 17 year sentence. As a result of the February 14, 2018, evidentiary hearing and after considering the record in both this case and the underlying criminal action, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the *Federal Rules of Civil Procedure*.

#### A. Findings of Fact[1]

Attorney Riggins was appointed to represent Phipps in his criminal case. Based on the charge of conspiracy to distribute 500-grams of methamphetamine and 100-kilos or more of marijuana, Phipps faced a sentence of ten years to life. In addition, because Phipps had two prior felony drug convictions, Attorney Riggins understood that Phipps potentially faced a life sentence if convicted and if the Government filed an information pursuant to 21 U.S.C. §851.

---

[1] Certain issues of fact cannot be resolved in this case without making a determination of which version of the pivotal events was more credible. In making this and other determinations as to contested issues, the court has considered the customary factors associated with credibility–*e.g.,* demeanor, detail, consistency, opportunity to observe or perceive the events testified to, etc. It has not relied solely on the number of witnesses who related a particular event or on any other single factor.

Phipps testified that he remembers his first meeting with Attorney Riggins in April, 2010. At that time, Phipps understood that the penalty he faced was ten years to life.

In June 2010, the United States made a plea offer of twenty years. Shortly thereafter, Attorney Riggins advised Phipps of the offer and Phipps rejected it. Based on Attorney Riggins conversations with Phipps, Attorney Riggins believed that Phipps should have a mental health evaluation.

On July 2, 2010, Attorney Riggins met with Phipps and talked about the application of Title 21, United States Code, § 851. Attorney Riggins told Phipps that it was in his best interest to resolve his case because he had two felony drug convictions and if a § 851 Information was filed listing his two prior felony drug convictions, Phipps would face a mandatory minimum sentence of life in prison if convicted at trial.

Attorney Riggins sent Phipps a letter memorializing Phipps' rejection of the plea offer in August 2010 and specifically recorded that he understood that Phipps would not accept any plea offer which included a sentence greater than three years.[2]

On August 19, 2010, the United States made a second plea offer. This time the plea agreement included a binding sentence of seventeen years. Attorney Riggins conveyed that offer to Phipps and again told him that if he proceeded to trial, the United States could file the § 851 Information listing his two prior drug felony convictions. Attorney Riggins also conveyed that if that happened Phipps would receive a life sentence, the mandatory minimum, if convicted. Phipps firmly rejected this plea offer. Phipps testified at the evidentiary hearing that he did not believe that the 17-year sentence was a fair offer. He thought instead that the United States should have

---

[2] The Court notes that the letters referenced throughout this Order were discussed during the evidentiary hearing, but the documents themselves were not admitted into evidence by either party.

offered him a sentence closer to the 3 years he requested. Attorney Riggins testified that Phipps explained to him that if Phipps served a 17-year sentence, he would be about 66 to 68 years of age at the time he was released, and that no man in his family had lived past the age of 63. A seventeen-year sentence was effectively a life sentence to him, making the difference between 17 years and life irrelevant. Accordingly, Phipps rejected the United States' plea offer and continued to insist that he would not accept any offer greater than three years. Phipps testified that at this time, he believed that if he went to trial he would receive a 20-year sentence. This belief was not wholly mistaken because at the time, the United States had not filed the § 851 Information.

On September 23, 2010, Attorney Riggins filed a Motion for Psychiatric & Psychological Evaluation and Determination of Mental Competency. That motion was granted and this Court authorized a psychological evaluation and treatment.

On October 8, 2010, Attorney Riggins again met with Phipps, this time in the U.S. Marshal's office. During this meeting, Attorney Riggins went over the plea offer with Phipps again in an effort to get him to accept the seventeen years.

In October 2010, Attorney Riggins sent another letter to Phipps regarding the still pending plea offer. The letter recorded the fact that the United States would not accept the three to five-year sentence Phipps wanted and stated that to avoid trial, Phipps would need to accept an offer of around 20 years.

On January 13, 2011, the Court and the parties received the psychological evaluation prepared for Phipps. The evaluation reflected that Phipps had suffered from serious mental health problems since he was a teenager. In addition, Phipps was suffering from auditory hallucinations and did not want to take medications. The evaluation concluded that Phipps was competent to stand trial. This Court understood that Phipps was competent.

7

On January 18, 2011, the Court instructed the parties of the following:

> Because of the complicated logistical arrangements that must be made to accommodate a trial with twelve (12) defendants, no change of plea hearings will be conducted by the Court after the close of business on Monday, February 7, 2011, absent a convincing showing of exigent circumstances warranting the Court's forgiveness of the defendant's dilatoriness.
> Should any of the remaining defendants choose to exercise his or her option to forego trial by entering a plea, change of plea hearings will be held the afternoon of February 7, 2011. . . .

See Crim. dkt. 657.

On January 25, 2011, Attorney Riggins again sought to advise Phipps regarding the plea offer. In particular, Attorney Riggins noted that the competency report reflected that Phipps stated that his attorney told him he could receive a 20-year sentence if convicted at trial.[3] Attorney Riggins attempted to rectify the confusion regarding the potential sentence by again talking to Phipps. Attorney Riggins advised Phipps that if he was convicted at trial and the Court found that he had sustained two prior felony drug convictions, that he would face a mandatory sentence of life imprisonment. At that point in time, the United States' 17-year plea offer was still open. Attorney Riggins verbally advised Phipps that his mandatory minimum sentence was at least ten years and that he should use caution because if he went to trial and the prosecutor filed the § 851 Information, he could receive a life sentence. Again, Phipps rejected the plea offer. Phipps indicated to Attorney Riggins that he understood this potential sentence and indicated that he would decline the government's plea offer, but that he would accept a plea agreement of seven years' imprisonment. Shortly thereafter, Attorney Riggins conveyed Phipps' counteroffer to

---

[3] The competency report also reflected that Phipps was aware that he could receive a harsher sentence because of his criminal history and that Phipps had been using the law library to research whether his criminal history could be used at sentencing. Crim. dkt. 655 at p. 9.

Assistant United States Attorney Blackington. This counteroffer was rejected by the United States. *See* dkt. 11-1.

On February 16, 2011, two days before trial, (and after the Court's deadline to request a change of plea hearing) the United States filed its § 851 Information, reporting that Phipps had two prior felony drug convictions. Ultimately, a jury convicted Phipps, and he was sentenced to life in prison.

Nicole Phipps (Phipps' daughter), Debra Lowe (Phipps' sister), and Gary Couch (Phipps' brother) also testified at the evidentiary hearing. They testified that they spoke to Phipps regularly prior to his criminal trial and that Phipps told them he was offered a 20-year plea deal, but never stated that he could be facing a mandatory life sentence. They also testified that Attorney Riggins did not tell them that Phipps faced a life sentence. None of these witnesses, however, were present when Attorney Riggins met with Phipps.

In summary, Mr. Riggins' testimony is found to be credible and is accepted as true. In particular, during the time Attorney Riggins represented Phipps there were at least 12 meetings at which Attorney Riggins told Phipps that if he was convicted at trial and the United States filed the § 851 Information, he faced a mandatory sentence of life imprisonment. Phipps indicated to Attorney Riggins that he understood that he could get a life sentence if he went to trial. He told Attorney Riggins that the 17-year plea agreement and life in prison were the same thing, and he might as well take his chances. Phipps never indicated a willingness to accept a sentence of more than seven years in prison. Throughout Attorney Riggins' representation of Phipps, Attorney Riggins held ongoing negotiations with the United States and successfully persuaded the prosecutor to hold off on filing the § 851 Information until just two days before trial so that Phipps could accept the plea agreement.

**B. Conclusions of Law**

To make a successful claim of ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In reviewing counsel's performance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. *Id.* at 688. Prejudice is established by a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

*1. Counsel's Performance was Adequate*

The Supreme Court has recognized that defendants are entitled to the effective assistance of competent counsel during plea negotiations. See *Lafler v. Cooper*, 132 S.Ct. 1376 (2012). In *Missouri v. Frye,* 566 U.S. 134 (2012), the Supreme Court held "that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* at 145. A lawyer's performance may be deficient if "he advises his client to reject a plea bargain in the face of overwhelming evidence of guilt and an absence of viable defenses." *Gallo-Vasquez v. United States*, 402 F.3d 793, 798 (7th Cir. 2005). The Supreme Court has instructed that courts must "respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel." *Premo v. Moore*, 562 U.S. 115, 125 (2011). Judicial restraint is critical because "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." *Id.* at 124.

Attorney Riggins communicated all formal offers from the prosecution to Phipps. He also presented Phipps' counteroffers to the prosecutor. Attorney Riggins advised his client to accept the 17-year plea bargain and correctly explained that if the United States filed the § 851 Information listing Phipps' two prior felony drug sentences, he would face a mandatory life sentence if convicted.

Phipps' testimony to the contrary is rejected. The court accepted Attorney Riggins' testimony that he explained to Phipps that he would face a life sentence if convicted at trial. In addition, Phipps was informed at both his April 13, 2010, Initial Appearance on Indictment hearing and May 5, 2010, detention hearing that if he had two prior felony drug convictions he faced a mandatory minimum sentence of life in prison if convicted. *See* dkts. 185 and 186. Phipps' argument that he was denied this information is rejected.

Attorney Riggins' job was made more difficult by the fact that Phipps has a chronic mental illness and was exhibiting some current symptoms of psychosis, including auditory hallucinations and circumstantial thinking.

Supreme Court precedent has long made clear that "[a] criminal defendant may not be tried unless he is competent, and he may not ... plead guilty unless he does so 'competently and intelligently.'" *Godinez v. Moran,* 509 U.S. 389, 396 (1993) (citation omitted) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 468 (1938)). This requirement "has a modest aim: It seeks to ensure that [the defendant] has the capacity to understand the proceedings and to assist counsel." *Godinez,* 509 U.S. at 402; *see also Dusky v. United States,* 362 U.S. 402, 402 (1960). To safeguard this constitutional guarantee, a court must, on either party's motion or *sua sponte,* order a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to

understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a).

At the request of Attorney Riggins, a competency examination was ordered, and the Forensic Psychologist concluded that Phipps does not suffer from a mental disease or defect which rendered him unable to understand the nature and consequences of the proceedings against him or to assist properly with his defense. Crim. dkt. 655 at 10.

Thus, Phipps was like other defendants who "may have serious mental illness while still being able to understand the proceedings and rationally assist his counsel." *United States v. Kenney*, 756 F.3d 36, 44 (1st Cir. 2014) (*quoting United States v. Widi,* 684 F.3d 216, 221 (1st Cir. 2012) and recognizing that mental health concerns are endemic to the criminal justice system) (referencing James & Glaze, Bureau of Justice Statistics Special Report: Mental Health Problems of Prison and Jail Inmates 1 (2006) (reporting that 45% of federal prisoners in 2005 suffered mental health problems)).

Given the fact that Phipps was found to be legally competent, Attorney Riggins offered appropriate legal advice during plea negotiations even if Phipps was never willing to accept that he would face a life sentence if convicted given his prior criminal history. *See e.g., Davis v. United States*, 858 F.3d 529, 534-35 (8th Cir. 2017) (stating that petitioner's mental illness provides a basis for ineffective assistance of counsel only if the attorney knew or should have known of it at the time and failed to seek a competency hearing); *Crenshaw v. Wolff*, 504 F.2d 377, 380 (8th Cir. 1974) (affirming denial of post-conviction relief where "there was no evidence that the trial attorney knew or should have known about petitioner's possible incompetency"). There is no evidence to conclude that Phipps' mental health issues—not his belief that a seventeen-year sentence would be an effective life sentence given his life expectancy—were the reason for Phipps'

failure to follow Attorney Riggins' legal advice. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty.").

At the evidentiary hearing, Phipps' counsel repeatedly pointed out that Attorney Riggins' correspondence with Phipps did not specifically state that Phipps should use caution in rejecting the 17-year offer because he potentially faced a life sentence. This Court is not aware of any requirement that this legal advice must be memorialized in writing and perhaps there are strategic reasons for not doing so. That said, absent strategic reasons to not place the content of plea negotiations in a written document, the Court encourages defense counsel to consider the benefits of written communication of both formal plea offers and the potential consequences of rejecting those offers.

Based on the facts accepted above, however, Phipps received the benefit of competent legal advice during plea negotiations. Phipps was told that he could face a life sentence if convicted at trial given his criminal history. Phipps has not identified any other information that he believes his attorney should have provided him that would have caused him to accept the government's plea offer. Phipps' failure to accept the government's plea offer was contrary to counsel's advice and the result of his own strategic decision.

### *2. Prejudice*

Even if Phipps were able to show deficient performance, he would not be entitled to relief because he was not able to demonstrate that he was prejudiced by his attorney's representation. To show prejudice in the plea bargaining context, a defendant must demonstrate a reasonable probability that "the outcome of the plea process would have been different with competent advice." *Gaylord v. United States*, 829 F.3d 500, 506 (7th Cir. 2016) (quoting *Lafler v. Cooper*,

132 S.Ct. 1376, 1384 (2012)). Thus, Phipps must also demonstrate that but for his counsel's errors, he would have pled guilty and would not have insisted on going to trial.

Phipps argues that he would have accepted the plea deal if his attorney told him that he could be sentenced to life in prison if convicted at trial. Pet.'s Aff. at dkt 15. This argument is rejected. At the evidentiary hearing, Phipps stated that he would have pled guilty, but he has not admitted that he is in fact guilty. He argued that he is both actually and factually innocent of conspiracy as charged in the Superseding Indictment in his motion for relief pursuant to § 2255. Dkt. 39 at p. 11-16. Phipps asserts that he was a methamphetamine addict trying to buy to support his habit and that at no time did he conspire to achieve a common goal. In order to show prejudice, Phipps must demonstrate that he would have pled guilty. *See e.g., Welch v. United States*, 370 F. App'x 739, 743-44 (7th Cir. 2010) (explaining "even now Welch continues to insist that he is innocent, which makes it difficult to believe his assertion that he would have accepted a plea deal if Chiphe had negotiated one") (citing numerous cases). Phipps did not meet this burden at the evidentiary hearing.

### IV. Conclusion

For the reasons explained above, Phipps' counsel was not ineffective in advising him regarding the United States' plea offer. Phipps is not entitled to relief in this action. Accordingly, his motion for relief pursuant to § 2255 is **denied**, and this action must be dismissed with prejudice.

Judgment consistent with this Entry shall now issue. A copy of this Entry and of the accompanying Judgment shall be entered in the underlying criminal action, Case No. 2:10–cr–0007–JMS–CMM–14.

## V. Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 Proceedings, and 28 U.S.C. § 2253(c), the Court **grants** a certificate of appealability. This case is unique in that the petitioner was found to be competent for trial, but mentally ill. It was clear to the undersigned that Phipps was confused during the sentencing hearing. Attorney Riggins had the difficult task of assisting Phipps with plea negotiations under these circumstances. This Court was unable to find any case law that discusses the prevailing professional norms or what actions are objectively reasonable when an attorney is attempting to advise his or her competent but mentally ill client. Such guidance could be useful to the Court and the defense bar.

The Court therefore **grants** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 3/5/2018

*[Signature]*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel